1. The offer of the defendant to prove the bad character of the plaintiff who was the father of the girl seduced was properly overruled. His character was in no sense in issue. If a jury were authorized to take the feelings of the plaintiff into account in assessing damages the evidence would not tend to enlighten them upon that subject unless insensibility is deemed a legal consequence of a bad reputation. Such *Page 193 
an inference would not be in accordance with the facts nor is it a presumption of law.
2. The plaintiff's counsel asked a witness what the defendant was worth. The question was objected to and allowed by the judge, and the defendant excepted. The objection was not to the mode of proof specifically, but to the competency of the fact sought to be established. The custom at the circuit has been to admit evidence of this character, but I have not been able to discover in the elementary writers on evidence authority for the practice (Starkie's Ev. 7 Am. ed. vol. 2, 772; 2 Phil. Ev., Cowen Hill's ed., 218; Stephens' Nisi Prius, 2356-7). These authors concur in saying that damages beyond the mere loss of service may be given for the dishonor of the plaintiff and his family and for injured feelings. But those damages are notwithstanding intended as a compensation for an actual though indefinite injury to which the plaintiff has a right, whatever may be the circumstances of the defendant, and upon principle to nothing more. If the defendant can not show his poverty in mitigation of damages, there is no reason why the plaintiff should aggravate them by proof of his wealth. Starkie would seem to be of the opinion that such evidence was admissible in actions for criminal conversation (vol. 2, 254). But the precise contrary was held by Alderson B., in Jones v. Buddington (6 Car. P. 589). He remarks that "such evidence had often been given, but that it was improper. The plaintiff is entitled to as much damages as a jury think is a compensation for the injury he has sustained, and the amount of the defendant's property is not a question in the case." There is good sense in these observations, and they strike at the foundation of punitive or vindictive damages. There can be no reason why twelve men wholly irresponsible should be allowed to go beyond the issue between the parties litigating, and after indemnifying the plaintiff for the injury sustained by him proceed as conservators of the public morals to punish the defendant in a private action for an offence against society. If the jury have the right to impose a fine by way of example, the plaintiff has no possible claim to it, nor ought the court to interfere *Page 194 
and set it aside, however excessive it may be. In ordinary cases of misdemeanor the legislature have restricted the power of the court in the imposition of penalties within certain definite limits. But a jury in civil actions have by this hypothesis an unlimited discretion to determine the crime and upon the measure of redress demanded by the public interest. The right stands upon no principle nor in reference to actions of this character upon any authority. If the jury were not authorized to give vindictive damages the testimony was wholly irrelevant and should have been excluded.
3. The defendant moved for a nonsuit upon the ground that the relation of master and servant did not subsist between the plaintiff and his daughter when she was seduced. It appeared that she was the apprentice of the defendant and bound to live with him until she was eighteen, and that the seduction occurred while she was thus in fact and in law the servant of the defendant. The relation of master and servant is the foundation of the action for loss of service (4 Comstock, 38 and cases there cited). The plaintiff to maintain the action must have had the right to the service of his daughter. But he proved that she not only resided with the defendant but owed him service when the injury was committed. Unless the defendant procured the daughter to enter into his service with a view to her seduction, of which there is no pretence, the plaintiff should have been nonsuited.
We all agree that the judgment should be reversed, for the reason last suggested. My brethren express no opinion upon the other points in the case.